UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| CHRISTY GONSALEZ-CAMPOS,<br><br>Movant,<br><br>vs.<br><br>UNITED STATES OF AMERICA,<br><br>Respondent. | 4:17-CV-04127-KES<br><br><br>REPORT & RECOMMENDATION |

## INTRODUCTION

Movant, Christy Gonsalez-Campos[1], has filed a *pro se* motion to vacate, set aside, or correct her sentence pursuant to 28 U.S.C. § 2255.  See Docket No. 1.[2]  Now pending is a motion by respondent the United States of America ("government") to dismiss all of Ms. Gonsalez-Campos' claims.  See Docket No. 20.  This matter has been referred to this magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A) & (B) and the October 16, 2014, standing order of the

---

[1] Ms. Gonsalez-Campos was originally indicted under the name Cristina Dawn Griego, a/k/a Cristina Dawn Myers.  See United States v. Gonsalez-Campos, CR 15-40120 (hereinafter "CR"), Docket No. 1. (D.S.D. Oct. 10, 2015).  By oral order on June 13, 2016, the alias  "Cristina Dawn Gonzalez-Campos" was added.  CR Docket 109.  The record was finally clarified by order dated December 28, 2016, wherein Ms. Gonsalez-Campos' name was verified with her social security card as being Christy Dawn Gonsalez-Campos.  See CR Docket 161.

[2] Within this opinion the court cites to documents in Ms. Gonsalez-Campos' civil habeas case by simply citing the court's docket number for that document. Documents filed in her underlying criminal case will be cited "CR" followed by the docket number from the criminal case.

Honorable Karen E. Schreier, United States District Judge.  The following is
this court's recommended disposition of the government's motion.

## FACTS

### A.    Background

Ms. Gonsalez-Campos was charged in an indictment with transfer of an
unregistered firearm or aiding and abetting such transfer (count 3) and
conspiracy to transfer an unregistered firearm (count 4).  See United States v.
Mound, et al., CR No. 15-40120-03 (hereinafter "CR"), Docket No. 1 (D.S.D).
She made her initial appearance on February 25, 2016, at which time Melissa
Fiksdal was appointed as counsel for Ms. Gonsalez-Campos.  See CR Docket
Nos. 49 & 56.

The parties ultimately reached a plea agreement and on June 13, 2016,
Ms. Gonsalez-Campos pleaded guilty to count 3 of the indictment charging her
with transfer of an unregistered firearm or aiding and abetting the same.
CR Docket Nos. 96-98 & 108.  During the hearing, Ms. Gonsalez-Campos made
a number of statements calling into question whether she believed she had
committed the crime to which she was pleading guilty.  The government then
made a proffer of certain facts and Ms. Gonsalez-Campos stated she did not
disagree that the government could prove those facts.  The court then accepted
Ms. Gonsalez-Campos' plea.  The conspiracy count was dismissed by the
government as part of the plea agreement.  Sentencing was set for August 29,
2016.  CR Docket No. 110.

Defense counsel filed objections to the presentence report on behalf of
Ms. Gonsalez-Campos.  CR Docket No. 125.  Sentencing occurred on

2

August 29, 2016. During the sentencing hearing, the district court refused to give Ms. Gonsalez-Campos a two-point reduction under the United States Sentencing Guidelines ("USSG") for acceptance of responsibility due, in part, to Ms. Gonsalez-Campos' statements at her change of plea hearing.

Ms. Gonsalez-Campos was sentenced to 41 months' imprisonment to be served consecutively to the state sentence she was currently serving and 3 years' supervised release. CR Docket Nos. 134-135, 145 & 162.

Ms. Gonsalez-Campos filed a direct appeal, arguing that the district court erred at sentencing when it denied her credit under the USSG for acceptance of responsibility. On August 7, 2017, the Eighth Circuit Court of Appeals affirmed the district court, noting the evidence supporting the district court's decision, but ultimately dismissing the appeal because the court found Ms. Gonsalez-Campos' waiver of her right to appeal was voluntary, knowing and intelligent. CR Docket 178.

**B.     Ms. Gonsalez-Campos' § 2255 Motion**

Ms. Gonsalez-Campos filed her current motion to vacate, correct or set aside her sentence on September 15, 2017. See Docket No. 1. In ground one of her motion, Ms. Gonsalez-Campos alleges her counsel was ineffective because:

> I wrote the Judge on multiple occasions informing her that my attorney was not representing effectively. I was pressured by her into making decisions under extreme distress. Counsel also refused to file bond motion and to obtain documentation that could have effected (sic) my sentence dramatically. There was a hearing regarding ineffective counsel. Judge gave counsel the opportunity to correct issues, within a month, I informed the Judge again that these problems still existed. I received no response.

3

<u>See</u> Docket No. 1, p. 4.

In her second ground for relief Ms. Gonsalez-Campos claims:

Due to communication issues with Counsel, I was not properly informed on the appeal process.  Reconsideration of the Appellate Court's decision regarding my receiving 2 points for acceptance of responsibility is requested.

See Docket No. 1, p. 4.

The government now moves to dismiss each of Ms. Gonsalez-Campos' claims for relief.  <u>See</u> Docket Nos. 20 & 21.

## DISCUSSION

### A.    Scope and Procedure Applicable to a § 2255 Motion

Section 2255 of Title 28 of the United States Code provides, in relevant part, as follows:

(a)  A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authority authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a).

Section 2255 of Title 28 of the United States Code was enacted to supersede habeas corpus practice for federal prisoners.  <u>Davis v. United States</u>, 417 U.S. 333, 343-44 (1974).  Prior to the enactment of § 2255, habeas claims had to be brought in the district where the prisoner was confined, resulting in overburdening those districts where federal correctional institutions were located and presenting logistical issues because the record in the underlying criminal case was often in a distant location.  <u>United States v. Hayman</u>, 342

U.S. 205, 212-16 (1952).  The enactment of § 2255 resolved these issues by requiring that the motion be filed in the sentencing court.  <u>Id.</u>

The scope of a § 2255 motion is seemingly broader than the scope of a habeas petition, the latter of which is typically limited to allegations of a constitutional dimension.  Section 2255 allows a federal prisoner to "vacate, set aside or correct" a federal sentence on the ground that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."  <u>See</u> 28 U.S.C. § 2255.  Where the allegation for relief is *not* based on a violation of a Constitutional right or an assertion that the court was without jurisdiction, the Supreme Court has read a "fundamentality" requirement into § 2255--relief is available for only those errors which constitute a "fundamental defect which inherently results in a complete miscarriage of justice" or "an omission inconsistent with the rudimentary demands of fair procedure."  <u>Hill v. United States</u>, 368 U.S. 424, 428 (1962); <u>see</u> <u>Peguero v. United States</u>, 526 U.S. 23, 27-30 (1999).

Generally, petitioners are precluded from asserting claims pursuant to § 2255 that they failed to raise on direct appeal.  <u>United States v. Frady</u>, 456 U.S. 152, 167-68 (1982); <u>McNeal v. United States</u>, 249 F.3d 747, 749 (8th Cir. 2001).  When a § 2255 petitioner asserts a claim that is procedurally defaulted because it was not raised on direct appeal, the claim can only proceed after the petitioner has shown either:  (1) actual innocence or (2) that the procedural default should be excused because there was both cause for the default and

actual prejudice to the petitioner.  Bousley v. United States, 523 U.S. 614, 621-22 (1998); McNeal, 249 F.3d at 749.  Therefore, barring a claim of actual innocence, a petitioner must show both cause for why he failed to raise an issue on direct appeal as well as actual prejudice caused by the alleged errors.

Appellate courts generally refuse to review claims of ineffective assistance of counsel on direct appeal; such claims are, therefore, properly addressed for the first time in a § 2255 motion such as the one here.  See United States v. Lee, 374 F.3d 637, 654 (8th Cir. 2004) (ineffective assistance of counsel claims are not generally cognizable on direct appeal and will be heard only to prevent a miscarriage of justice or in cases where the district court has developed a record on the issue).  Therefore, no procedural default analysis is required before examining a claim of constitutionally-deficient counsel.  Finally, motions pursuant to § 2255 are also subject to a one-year statute of limitations pursuant to § 2255(f).

## B.    Ineffective Assistance of Counsel Claims

### 1.    The Strickland Standard

Ms. Gonsalez-Campos alleges her defense counsel was deficient in representing her.  The Sixth Amendment of the Constitution of the United States affords a criminal defendant with the right to assistance of counsel.  The Supreme Court "has recognized that 'the right to counsel is the right to effective assistance of counsel.' "  Strickland v. Washington, 466 U.S. 668, 698 (1984) (citing McMann v. Richardson, 397 U.S. 759, 771, n.14 (1970)).  Strickland is the benchmark case for determining if counsel's assistance was so defective as to violate a criminal defendant's Sixth Amendment rights and

6

require reversal of a conviction.  Id. at 687.  "When a convicted defendant
complains of the ineffectiveness of counsel's assistance, the defendant must
show that counsel's representation fell below an objective standard of
reasonableness."  Id. at 687-688.  The defendant must also show that counsel's
unreasonable errors or deficiencies prejudiced the defense and affected the
judgment.  Id. at 691.  The defendant must show "there is a reasonable
probability that, absent the errors, the factfinder would have had a reasonable
doubt respecting guilt."  Id. at 695.  In sum, a defendant must satisfy the
following two-prong test:

> First, the defendant must show that counsel's performance was
> deficient.  This requires showing that counsel made errors so
> serious that counsel was not functioning as the "counsel"
> guaranteed the defendant by the Sixth Amendment.  Second, the
> defendant must show that the deficient performance prejudiced the
> defense.  This requires showing that counsel's errors were so
> serious as to deprive the defendant of a fair trial, a trial whose
> result is reliable.  Unless a defendant makes both showings, it
> cannot be said that the conviction or death sentence resulted from
> a breakdown in the adversary process that renders the result
> unreliable.

Id. at 687.

"There is a presumption that any challenged action was sound trial
strategy and that counsel rendered adequate assistance and made all
significant decisions in the exercise of professional judgment."  Hall v.
Luebbers, 296 F.3d 685, 692 (8th Cir. 2002).  It is the petitioner's burden to
overcome this presumption, and a "petitioner cannot build a showing of
prejudice on a series of errors, none of which would by itself meet the prejudice
test."  Id.  Judicial scrutiny of attorney performance is highly deferential, with a

strong presumption that counsel's conduct falls within the range of reasonable professional conduct.  <u>Strickland</u>, 466 U.S. at 698.

### 2.    Application of <u>Strickland</u> to Movant's Claims

Liberally construing Ms. Gonsalez-Campos' motion, the court perceives four separate claims of ineffective assistance of counsel: (1) Ms. Gonsalez-Campos asserts she was pressured by her into making decisions under extreme distress; (2) counsel refused to file bond motions, (3) counsel failed to obtain documentation that could have affected Ms. Gonsalez-Campos' sentence, and (4) following a hearing regarding ineffective counsel, counsel failed to correct the issues.

#### a.    Pressure Applied

Ms. Gonsalez-Campos argues she was pressured into making decisions, apparently by her own counsel.  The court construes this allegation to apply to the decision to plead guilty for two reasons:  (1) decisions made prior to the plea are not cognizable claims in this § 2255 motion and (2) this is the most plausible construction of Ms. Gonsalez-Campos' motion.

##### i.    Pre-Plea Allegations are Not Cognizable and Ms. Gonsalez-Campos' Plea was Voluntary, Knowing & Intelligent

First, the court explains why pre-plea decisions are not cognizable in this § 2255 motion.  When a § 2255 petitioner has been convicted in her direct criminal proceedings by entering a guilty plea, the scope of issues available to him to be raised in habeas proceedings is curtailed.  As the Supreme Court has stated:

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process.  When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.  He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in [McMann v. Richardson, 397 U.S. 759 (1970)].
>
> A guilty plea, voluntarily and intelligently entered, may not be vacated because the defendant was not advised of every conceivable constitutional [issue] he might have to the charge, no matter how peripheral such a plea might be to the normal focus of counsel's inquiry.  And just as it is not sufficient for the criminal defendant seeking to set aside such a plea to show that his counsel in retrospect may not have correctly appraised the constitutional significance of certain historical facts, . . . it is likewise not sufficient that he show that if counsel had pursued a certain factual inquiry such a pursuit would have uncovered a possible constitutional infirmity in the proceedings.

Tollett v. Henderson, 411 U.S. 258, 267 (1973).

The Supreme Court has explained why a guilty plea cuts off all constitutional claims that predate a plea.  Pleas are necessarily based on imperfect knowledge of the law and facts—one can only know what the result of a full-blown jury trial will be after the trial has been had, and even then, truth is still often in dispute.  McMann, 397 U.S. 769-70.  If a defendant admits his commission of a crime, upon good faith, reasonably competent advice from his counsel, the defendant assumes the risk that his attorney might be wrong about the facts or the outcome of a legal issue.  Id. at 774.

The issue presented in habeas proceedings is not whether—in retrospect--counsel was right or wrong about a certain fact or legal analysis, but rather, whether the defendant's plea was made voluntarily and intelligently

and upon advice from his attorney that was "within the range of competence demanded of attorneys in criminal cases." Id. at 770-71.  Therefore, a defendant who pleaded guilty because of a prior coerced confession that he believed would be used against him at trial is not entitled to an evidentiary hearing in a habeas proceeding without showing other, extenuating circumstances.  Id. at 771.

A voluntary and knowing plea is not transformed into a coerced plea simply because the defendant pleaded guilty to obtain a lesser sentence than the maximum possible penalty that would have been applicable if defendant had been convicted at trial.  Brady v. United States, 397 U.S. 742, 751 (1970); Parker v. North Carolina, 397 U.S. 790, 795 (1970).  Guilty pleas are valid if the court record affirmatively discloses the plea was both voluntary and intelligent.  Boykin v. Alabama, 395 U.S. 238, 242 (1969).

A plea is voluntary if it is made by a defendant who is "fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel," and so long as the plea was not induced by threats, misrepresentation, or by promises that are improper, unfulfilled, or unfulfillable.  Brady, 397 U.S. at 755.

A plea is intelligently made if the defendant was aware of the nature of the charge against him, and he was mentally competent and in control of his mental faculties.  Brady, 397 U.S. at 756.  A plea is not rendered unintelligently made simply because, long after the plea was entered, the defendant realizes his cost-benefit analysis as to whether to go to trial or to

plead guilty did not correctly take into account every relevant factor which entered into his decision.  Id. at 756-57.

Here, an examination of the transcript of the plea hearing (PH), reveals Ms. Gonsalez-Campos' plea was voluntary.[3]  Ms. Gonsalez-Campos was sworn in at the inception of the plea hearing, so all her answers were given under oath.  See CR Docket No. 146, PH at p. 2.  The court asked Ms. Gonsalez-Campos whether she was able to understand what was happening in court; she said she was.  Id. at p. 5.  The court asked whether Ms. Gonsalez-Campos felt able to "think through all the pros and cons of pleading guilty or not guilty; she said she was.  Id.

Ms. Gonsalez-Campos told the court under oath that she had read the plea agreement and the plea agreement supplement, that she discussed both with her lawyer and understood both.  Id. at p. 9.  Ms. Gonsalez-Campos assured the court that no one had made any promises or assurances to her not in the plea agreement to persuade her to accept the plea agreement.  Id.  Ms. Gonsalez-Campos told the court no one had threatened her to try to persuade her to accept the plea agreement.  Id. at pp. 9-10.  The court asked Ms. Gonsalez-Campos whether anyone had attempted "in any way to force you to plead guilty today?"  Id. at p. 10.  Ms. Gonsalez-Campos told the court "no, ma'am."  Id.  The court asked her if she was "pleading guilty of her own free

---

[3] The PH also demonstrates that the plea was knowing and intelligent, but Ms. Gonsalez-Campos does not attack these aspects of her plea.  She only asserts that she was pressured into pleading.

will because [she believed she was] guilty?"  Id.  Ms. Gonsalez-Campos replied, "yes, ma'am."  Id.

At the plea hearing the court explained the appeal waiver provision in the plea agreement.  Id. at p. 13.  The court stated "you have waived, which means you've given up, your right to appeal everything about your case. Except if I sentence you higher than your advisory guideline range you can appeal whether that was reasonable or not.  Or if you think the court doesn't have jurisdiction over you or your case you can appeal whether there's jurisdiction. But you've given up your right to appeal everything else about your case."  Id. Ms. Gonsalez-Campos indicated to the court she understood the import of the appeal waiver provision.  Id.

The court advised Ms. Gonsalez-Campos that, in return for her plea to count 3, the government was agreeing to dismiss the other count in the indictment against her.  Id. at p. 25.  The court advised Ms. Gonsalez-Campos that the maximum penalty for count 3 was 10 years in prison and a fine of $250,000.  Id. at p. 11.  Ms. Gonsalez-Campos stated she understood the maximum penalty.  Id.  The court informed Ms. Gonsalez-Campos that the recommendations for sentencing contained in the plea agreement were not binding on the court, that the court could sentence her more severely than she might anticipate.  Id. at p. 10.  Ms. Gonsalez-Campos told the court she understood this.  Id.  The court informed Ms. Gonsalez-Campos she would not be allowed to withdraw her plea of guilty in the event of a more severe sentence.  Id.  Ms. Gonsalez-Campos told the court she understood.  Id.

The court explained that it would calculate her sentence under the USSG and consider that advisory sentencing range when determining Ms. Gonsalez-Campos' sentence.  Id. at pp. 11-12.  The court emphasized that it could not determine her USSG range at that point, but would await the presentence investigation report and any objections that might be made.  Id. at p. 12.  Ms. Gonsalez-Campose indicated she understood this.  Id.  The court informed Ms. Gonsalez-Campos her actual sentence might be higher or lower than the advisory USSG range.  Id.  Ms. Gonsalez-Campos indicated she understood this.  Id.

Ms. Gonsalez-Campo entered a plea of guilty to count 3 of the indictment charging her with transfer of an unregistered shotgun having a barrel of less than 18 inches long and/or aiding and abetting the transfer.  Id. at p. 26.

Based on the colloquy that took place between the court and Ms. Gonsalez-Campos at the change of plea hearing, the court concludes Ms. Gonsalez-Campos' plea was fully voluntary.  A plea is voluntary if it is made by a defendant who is "fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel," and so long as the plea was not induced by threats, misrepresentation, or by promises that are improper, unfulfilled, or unfulfillable.  Brady, 397 U.S. at 755.  Here, Ms. Gonsalez-Campos stated under oath in a solemn proceeding that no threats, misrepresentations or promises were made to her.  She indicated at every step of the proceeding that she understood and accepted what the court told her about the consequences of her plea and the nature of the plea agreement.

13

There are important policy concerns which support the finality of a knowing and voluntary guilty plea.  Blackledge v. Allison, 431 U.S. 63, 71 (1977).  For this reason, the force of the original plea hearing is great:

> . . . the representations of the defendant, his lawyer, and the prosecutor at [the plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings.  Solemn declarations in open court carry a strong presumption of verity.  The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.

Id. at 73-74.

Thus, where a petitioner testified under oath at his plea hearing that he had reviewed the plea agreement with counsel, that he understood counsel, that he was part of a drug conspiracy that distributed a specified quantity of drugs, and that he was pleading guilty of his own free will without threats or coercion, the plea was not involuntary.  Campos-Penaloza v. United States, 457 Fed. Appx. 596, *1 (8th  Cir. 2-8-12) (unpub'd) (*per curiam*) (citing United States v. Gray, 152 F.3d 816, 820 (8th Cir. 1998); and Nguyen v. United States, 114 F.3d 699, 703 (8th Cir. 1997)).  This conclusion was buttressed by the fact that petitioner never alleged that any new evidence came to light after his plea and he never requested to withdraw his plea.  Campos-Penaloza, 457 Fed. App. 596, at *1 (citing United States v. Washington, 198 F.3d 721, 724 (8th Cir. 1999)).  Ms. Gonsalez-Campos' plea was voluntary.

### ii.    Ineffective Assistance Claim as to the Plea

Where a habeas petitioner collaterally attacks her plea by arguing that counsel was ineffective in advising petitioner to plead guilty, the petitioner

must show not only that his counsel's performance was deficient, she must also show that he was prejudiced by counsel's substandard advice.  Hill v. Lockhart, 474 U.S. 52, 58-59 (1985) (quoting Strickland v. Washington, 466 U.S. 668 (1984)).  In the context of a guilty plea, in order for a habeas petitioner to demonstrate prejudice under Strickland, the petitioner "must show that there is a reasonable probability that, but for counsel's errors, [s]he would not have pleaded guilty and would have insisted on going to trial."  Hill, 474 U.S. at 59.

Ms. Gonsalez-Campos never alleges why her plea was inadvisable or why counsel's performance was deficient in recommending the plea.  She also never alleges that, had she received different advice from counsel, she would never have pleaded guilty and would have insisted on going to trial.  Accordingly, without such an allegation, Ms. Gonsalez-Campos cannot show Strickland prejudice.  Hill, 474 U.S. at 59.  Even if counsel were somehow deficient in some way unspecified by Ms. Gonsalez-Campos, without this crucial allegation of fact by the movant (i.e. she would have elected to go to trial), there is no prejudice.  Accordingly, the court recommends granting the government's motion to dismiss this portion of Ms. Gonsalez-Campos' ineffective assistance of counsel claim.

### b.    Bond Motions

Ms. Gonsalez-Campos argues counsel was ineffective for failing to seek pretrial release on her behalf.  The truth is, Ms. Gonsalez-Campos was never in federal custody pretrial.  When she appeared for her initial appearance, she appeared by a writ of habeas corpus *ad prosequendum*.

See CR Docket No. 44.  At the conclusion of the initial appearance, Ms. Gonsalez-Campos was returned to state custody.  Id. at Docket No. 48.  Ms. Gonsalez-Campos wrote a letter directly to the court asking to be released on bond.  Id. at Docket No. 65.  Approximately six weeks later, Ms. Gonsalez-Campos wrote directly to the court again seeking new counsel because, among other things, her current lawyer had failed to obtain pretrial release for her.  Id. at Docket No. 74.

In response to these letters, the court held an *ex parte* hearing on May 11, 2016.  Ms. Gonsalez-Campos again appeared via a writ from state custody.  Id. at Docket No. 75.  At the hearing, the court explained to Ms. Gonsalez-Campos that (1) Ms. Gonsalez-Campos was in state, not federal, custody; and (2) this court did not have the power to order the state court to release her.

Ms. Gonsalez-Campos again wrote directly to the court seeking pretrial release.  Id. at Docket No. 84.  The court denied the motion without a hearing, again explaining that Ms. Gonsalez-Campos was in state, not federal, custody and that this court was powerless to alter the defendant's custody status in state court.  Id. at Docket No. 85.

Ms. Gonsalez-Campos wrote directly to the court a fourth time seeking pretrial release.  Id. at Docket No. 87.  The court again denied the motion without holding a hearing, explaining that Ms. Gonsalez-Campos was in state custody, not federal custody, and that this court had no power to alter that situation.  Id. at Docket No. 89.

16

Shortly after this last order was entered, Ms. Gonsalez-Campos filed signed plea agreement documents with the court. Id. at Docket Nos. 96, 97 & 98. She appeared for her change of plea hearing in district court via a writ of habeas corpus *ad prosequendum*. Id. at Docket No. 101. Following the change of plea hearing, Ms. Gonsalez-Campos was once again returned to state custody. Id. PH at p. 28. She was again writted out of state custody in order to attend her sentencing hearing in federal court. Id. at Docket No. 132.

A bond motion by counsel would have been unavailing, just as Ms. Gonsalez-Campos' many *pro se* motions were unavailing. Ms. Gonsalez-Campos was never in federal custody prior to her sentencing. Instead, she remained in state custody throughout. The federal courts had no authority or power to order the state courts to release Ms. Gonsalez-Campos, absent an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. No such application was ever filed.

Furthermore, even if counsel could be shown to have been deficient for failing to file motions for pretrial release that would have been unsuccessful, Ms. Gonsalez-Campos has not shown how she was prejudiced by the absence of such motions. Firstly, she herself repeatedly brought the issue to the court's attention, so no prejudice came about due to counsel's failure to file such motions. Secondly, Ms. Gonsalez-Campos never explains how the filing of such motions would have had the potential for a different outcome in her case. Finally, as explained above, the bond motions are matters that would have arisen prior to Ms. Gonsalez-Campos' change of plea. Once a defendant pleads

guilty, as long as the plea is voluntary, knowing and intelligent (as the court has so found), the defendant waives the right to raise allegations of error that occurred prior to the plea.  <u>Tollett</u>, 411 U.S. at 267.  For all these reasons, this court respectfully recommends Ms. Gonsalez-Campos' ineffective assistance claim based on failure by counsel to make bond motions be denied.

### c.   Documentation Regarding Sentencing

Ms. Gonsalez-Campos also alleges counsel was ineffective for failing to "obtain documentation that could have effected (sic) my sentence dramatically."  <u>See</u> Docket No. 1.  Ms. Gonsalez-Campos never alleges what this documentation was that counsel should have obtained. Because she never identifies the documentation, she also never alleges how this documentation would have affected her sentencing hearing.

"A habeas corpus petitioner, alleging ineffective assistance of counsel, must show that a particular act or omission fell below the standard acceptable for attorneys in the same or similar circumstances."  <u>Beard v. Lockhart</u>, 779 F.2d 23, 26 (8th Cir. 1985) (citing <u>Strickland</u>, 466 U.S. at 693).  A general allegation is insufficient to warrant habeas relief.  <u>Id.</u>  Furthermore, a habeas petitioner has the burden to show <u>Strickland</u> prejudice.  <u>Strickland</u>, 466 U.S. 667.  Ms. Gonsalez-Campos has not satisfied either prong of <u>Strickland</u>:  she has not alleged with enough specificity an allegation of deficient performance and she has failed to allege prejudice.  Accordingly, the court recommends denying relief on this ineffective assistance of counsel claim.

18

### d.    Failure to Correct Issues

Ms. Gonsalez-Campos' final ineffective assistance of counsel claim is that she identified problems with counsel's behavior, the judge gave counsel a month to "correct issues" and counsel never corrected the issues. As with the above documentation issue, this allegation is too vague to support relief under § 2255. Ms. Gonsalez-Campos never identifies with specificity what the issues were counsel was supposed to correct or how the failure to correct those issues prejudiced Ms. Gonsalez-Campos' case. Ms. Gonsalez-Campos has, therefore, failed to carry either of her burdens under Strickland. Accordingly, the court recommends this ground for relief be denied.

## C.    Denial of Right to Appeal

Ms. Gonsalez-Campos alleges, "[d]ue to communication issues with counsel, I was not properly informed on the appeal process. Reconsideration of the Appellate Court's decision regarding my receiving 2 points for acceptance of responsibility is requested." See Docket No. 1 at p. 4. It appears Ms. Gonsalez-Campos is complaining that counsel never told her she had a right to request reconsideration of the panel opinion in her direct appeal. This does not state a cognizable claim under § 2255.

The Eighth Circuit disposed of Ms. Gonsalez-Campos' direct appeal because she entered into a plea agreement with a binding and valid appeal waiver. There is no reason to believe if she had petitioned for a rehearing that the panel—or the Eighth Circuit en banc—would have reached any different conclusion if rehearing were asked for. If this is a claim of ineffective

assistance of counsel, Ms. Gonsalez-Campos has failed to establish <u>Strickland</u> prejudice.

If this is a direct claim against the court, it cannot be raised in a § 2255 proceeding for the reason that the issue of the district court's refusal to grant acceptance of responsibility has already been raised and decided in Ms. Gonsalez-Campos' direct appeal. "With rare exceptions, § 2255 may not be used to relitigate matters decided on direct appeal." <u>Sun Bear v. United States</u>, 644 F.3d 700, 702 (8th Cir. 2011) (*en banc*) (citing <u>Davis v. United States</u>, 417 U.S. 333, 346-47 (1974)); <u>United States v. Wiley</u>, 245 F.3d 750, 752 (8th Cir. 2001); <u>United States v. McGee</u>, 201 F.3d 1022, 1023 (8th Cir. 2000) (*per curiam*). Issues may be relitigated in a § 2255 motion if the error constitutes "a fundamental defect which inherently results in a complete miscarriage of justice." <u>Davis</u>, 417 U.S. at 346-47; <u>Sun Bear</u>, 644 F.3d at 704. Or where the petitioner presents convincing new evidence of actual innocence. <u>Wiley</u>, 245 F.3d at 752 (citing <u>Weeks v. Bowersox</u>, 119 F.3d 1342, 1350-51 (8th Cir. 1997) (*en banc*)).

Ms. Gonsalez-Campos never alleges she has new evidence of actual innocence, nor do the errors she asserts constitute fundamental defects rendering her conviction and sentencing a complete miscarriage of justice. The court recommends denying this basis for § 2255 relief asserted by Ms. Gonsalez-Campos.

**D.    No Evidentiary Hearing is Warranted**

"While '[a] petitioner is entitled to an evidentiary hearing on a section 2255 motion unless the motion and the files and the records of the case

conclusively show that [he] is entitled to no relief,' no hearing is required 'where the claim is inadequate on its face or if the record affirmatively refutes the factual assertions upon which it is based.' " New v. United States, 652 F.3d 949, 954 (8th Cir. 2011) (quoting Anjulo-Lopez v. United States, 541 F.3d 814, 817 (8th Cir. 2008)).

"A district court may deny an evidentiary hearing where (1) accepting the petitioner's allegations as true, the petitioner is not entitled to relief, or (2) 'the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact.' " Guzman-Ortiz v. United States, 849 F.3d 708, 715 (8th Cir. 2017) (quoting United States v.Sellner, 773 F.3d 927, 929-30 (8th Cir. 2014)).

Here, no evidentiary issue is warranted.  Ms. Gonsalez-Campos' claims all fail on the merits given the settled record before the court.  There are no issues of fact or credibility to be determined.  Accordingly, the court recommends no evidentiary hearing be held.

## CONCLUSION

Based on the foregoing law, facts and analysis, this magistrate judge respectfully recommends that the government's motion to dismiss [Docket No. 20] be granted and that all of Ms. Gonsalez-Campos' claims for relief be dismissed.

## NOTICE OF RIGHT TO APPEAL

The parties have fourteen (14) days after service of this report and recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained.  See FED. R. CIV. P. 72;

28 U.S.C. § 636(b)(1)(B).  Failure to file timely objections will result in the waiver of the right to appeal questions of fact.  <u>Id.</u>  Objections must be timely and specific in order to require *de novo* review by the district court.  <u>Thompson v. Nix</u>, 897 F.2d 356 (8th Cir. 1990); <u>Nash v. Black</u>, 781 F.2d 665 (8th Cir. 1986).

DATED June 12, 2018.

BY THE COURT:

VERONICA L. DUFFY
United States Magistrate Judge